## SUPREME COURT.

PHINEAS ABBE, appellant, agt. ETHAMER A. ALLEN, respondent.

Where the plaintiff agreed with the defendant to furnish three substitutes for the plaintiff's three sons, who were subject to draft in the war, during 1864, for which the plaintiff paid the defendant $1,500 for each, in cash, and the plaintiff was to have the town and county bonds, which were then paying together, $1,500 bounty per man:

Held, that under a resolution of the board of supervisors of the county, "that here-after the sum of $25, be paid to any person for each volunteer enlisted by him within the county, after being received and mustered in, and credited on the quota of the county, or of any sub-district therein," the defendant was entitled to this sum of $25, for each of the three sons of the plaintiff ($75.) And no part of it belonged to the plaintiff, as bounty money. It was "hand money," to which the defendant was solely entitled, and not bounty money.

IN September, 1864, the appellant desired to procure three substitutes for his three sons, who were subject to draft, (then imminent,) and at Utica applied to respondent for the same. A verbal agreement was made that respondent was to furnish and enlist three men, as substitutes for said three sons, for which respondent should have $1,500 each, viz. : $4,500; and appellant was to have the town and county bonds paid as bounties. The towns in, and county of, Oneida, were then paying together $1,500 bounty per man, in bonds.

In July preceding the agreement, (1864,) the board of supervisors of Oneida county passed a resolution as follows:

"Resolved, That hereafter the sum of $25 be paid to any person for each volunteer enlisted by him within the county, after being received and mustered in, and credited

on the quota of Oneida county, or of any sub-district therein."

The respondent, under the agreement, enlisted the three substitutes, had them received and mustered in at Utica, and credited on the quota of Oneida county—received from appellant cash $4,500, the appellant receiving the town and county bonds to the same amount, $4,500.

Subsequently, (in the month of October, 1864,) the respondent, under the aforesaid resolution of the board of supervisors, received $25 each for said three men, as being the person who had enlisted them, making $75. The appellant brings this action to recover the $75, as " bounty" due, payable and going to him under the agreement.

As appears by his report, the referee found, " that the sum of $75 thus received by the defendant, (respondent,) was no part of the bounties to which, by the agreement of the parties, the plaintiff was entitled to receive on the mustering in and crediting of the three substitutes provided by the defendant, (respondent,) as herein above stated, but that the same was 'hand money' as it was called, to which the defendant (respondent) was solely entitled." Judgment was ordered in favor of respondent for costs, and duly entered, from which appellant appeals.

JOHNSON and PRESCOTT, for respondent.

1. There appears only one exception on the trial as to competency as evidence of the resolution of the board of supervisors.

It is believed this exception is not relied upon and will not be urged.

It was necessary and proper evidence to be received by the referee in construing the agreement, as claimed by the appellant, to determine whether the $75 claimed was bounty, and by the agreement, belonged to the appellant.

In any event it was proper, wholly discretionary, and the

referee was the sole judge of its competency. (8 *Watts R.*, 227; 1 *Bouvier's Law Dic.*, 256.)

The entire absence of exceptions to referee's report, no question for review. (6 *N. Y.*, 233; 11 *N. Y.*, 416; 14 *N. Y.*, 310.)

II. The issue in this case was wholly a question of fact, and the decision of the referee is final.

The claim is made on the part of the appellant, that he " was to have all the bounty," and that the $75 being bounty, under the agreement, it is his. It appears, that he wanted respondent " to take the town and county bonds." " He, (respondent) said they were ' not paying the money on the town and county bonds, and wanted I (appellant) should furnish the money and take the bonds,' I (appellant) was to have all the bounty."

It is evident from this, that at the time of the agreement, agreement, or word "bounty," was the " town and county bonds," which were the same in amount he paid respondent all that appellant supposed included by the terms of the in cash. This also appears from the fact he at first furnished respondent with papers to get the $75 (now claimed,) making no claim for same until afterwards. The respondent swears, " I told him if he would take the county and town bonds, and furnish the money, I would put in the three men (substitutes) for the bounties, and he would not be anything out. ' Soon after he said, put them in for me, I will furnish the money and take the bonds.' "

Here was a conflict as to the terms of the agreement, making it a question of fact, whether by it the appellant was to have all the bonds or all the bounty. The evidence sustains the finding of the referee and it is final. (*N. Y. Car. Oil Co* agt. *Richmond*, 6 *Bosw.*, 214; *Alger* agt. *Raymond*, 7 *Bosw.*, 418; *Grant* agt. *Morse*, 22 *N. Y.*, 323; *Bishop* agt. *Main*, 17 *How.*, 162.)

III. The appellant could not have recovered in this ac tion upon his own testimony.

The appellant makes claim to the $75 as "*bounty*," it ·is believed this appeal is only brought to have an appellate decision of whether the $75 claimed was "*bounty*."

· The referee expressly finds that respondent was "*entitled*" to receive the $75, and that it, (the $75) was "*no part of the bounties to which by the agreement of the parties the plaintiff (respondent) was entitled to receive*."

It is submitted that as between these parties the question of whether the $75 was bounty or not, was thus made a question of fact, and the decision is final.

But it will be claimed that the decision involves the legal definition of the word " bounty," and whether or not applicable to the $75.

*Bouvier's Law Dictionary* (*Vol.* 1, 189,) defines " bounty, a· sum of money or other thing, given, generally by the government, to certain persons, for some service they have done, or are about to do to the public. As bounty upon the culture of silk ; *the bounty given to an enlisted soldier;* and the like." "It differs from a reward, which is generally applied to particular cases ; and from a payment, as there is no contract on the part of the receiver of the bounty."

Webster defines it "a premium offered or given to induce men to enlist into the public service, &c."

These definitions indicate that the word "bounty" is only applicable to the payment made, or to be made, to the enlisted man, the volunteer, the soldier, and never to express a premium paid for procuring his enlistment.

That this is the true and popular definition and use of the word, is confirmed on examination of the acts of the legislature during the past war.

The word first appears in the acts of the legislature of 1863, when thirteen distinct bills were passed containing it: chapters 14, 15, 16, 46, 104, 184, 307 393 and of a general character, and chapters 19, 52, 170, 213 and 353 of special

application to named counties, towns, cities or villages. An examination of these several acts will show that never in a single instance do they make use of the word "*bounty*" except in reference to payments made or to be made to *volunteers* or *soldiers*, and all other payments are described as "*expenses of enlistment*."

In 1864, seven acts were passed; four of same (chapters, 8, 72, 182 and 390,) general, and three, (chapters 50, 169 and 339,) special, besides three concurrent resolutions of the legislature, all using the word "bounty," as describing the payments made or to be made to the enlisted man only, and describing other payments or disbursements as "expenses," "*expenses of their enlistment*," or "*expenses of procuring volunteers*," as see particularly, chap. 8, laws of 1864, sections 6 and 22; also, chap. 72, laws of 1864, p., 111.

The foregoing were all the acts of the legislature prior to the agreement, claimed upon by appellant, but the same use of the word, without an exception, is continued through the acts of the legislature since that time, which, we submit, gives a legislative definition, use and application of the word "bounty," not to be disputed, and in the absence of proof that the $75 was specially excepted, would necessarily decide that the same was not "bounty," but "expense of enlistment" to the county, or as the learned referee more appropriately describes same, "*hand money*."

That this is the judicial as well as legislative definition of the word "bounty," See *Craver* agt. *Creque*, (46 *Barb.*, 507;) *Powers* agt. *Shepard*, (49 *Barb.*, 419.)

In *Caughey* agt. *Smith*, 50 *Barb.*, 351,) BALCOM, J., says, at page 352, "It was held, in *Carsaw administratrix* agt. *Watts*, (8 *Doug.*, 350; *Eng. Com. Law*, 137,) that the prize money gained by an apprentice, serving on board a letter of marque ship, does not belong to the master of the apprentice; the usage being proved to be, that such money is the property of the apprentice. All

the judges in that case agreed that *bounty money* belongs to the minor." " I held, in *Ogden* agt. *Pomeroy*, at the Cortland circuit, that *bounty money*, paid by the government, or a county or town, to a minor, for enlisting into the military service of the United States, with the consent of his father, belongs to the son, and not to the father." " Besides, *bounties* paid for entering into the military service of the government are not earnings or wages, but in the nature of gifts, to which minors, and not their parents or masters, are entitled."

The resolution of the board of supervisors, shows this $75 was never to be paid to the soldier or volunteer enlisting, that it was not a gift; but was money earned of the county, wages agreed to be paid by the county for "enlisting" the volunteer so that he was "received, mustered and credited on the quota of" the county.

It was never, before the agreement, called or supposed "*bounty.*"

It was never in any known use of the word described as "*bounty.*"

It was not at the making of the agreement considered by the parties to be "*bounty.*"

It was not "*bounty.*"

BACON, J.—Upon the case stated by the plaintiff in his complaint, and that proved on the trial, there can hardly be a pretence that a right to recover anything was shown.

The statement of the complaint is that the plaintiff made a contract with the defendant, to furnish these substitutes for his three sons, for which he was to pay the defendant $1,500 each, making $4,500 in all, and was to receive the town, county and state bounties for the recruits as the equivalent for what he was thus to pay. The allegation is, that the defendant received all the bounties but refused to pay them over in full, but retained $100 of such bounties, and refused to pay it over to the plaintiff, and

this is the sum he claims in his complaint to recover. The proof is, that after some negotiation between the parties, it was finally agreed that the substitutes were to be put in at $1,500 each, the plaintiff to be entitled to the bonds which the town and county had voted to issue in payment for bounties, and which then amounted to $1,500 for each recruit, the result of the agreement being that the plaintiff was to furnish the cash to the amount of the bonds and receive them as the equivalent for his advance.

The effect of the transaction was that "one hand should wash the other," to use a common but expressive phrase, and the plaintiff would thus procure his substitutes without any expense to himself, and in the end, as the defendant expresses it, "would not be out anything."

And this is precisely what was done, the defendant procured the men, the plaintiff furnished the bounty money, being $4,500 in all, and received the town and county bonds amounting to precisely the same sum. If the defendant got any compensation for his services it came from some other quarter, and the whole matter was closed apparently to the satisfaction of all parties. Neither of them then evidently thought of—perhaps, were not aware of the resolution of the supervisors, to pay $25 to any person who should procure or enlist a volunteer after such volunteer should be received and mustered into the service. Subsequently the defendant procured the necessary voucher and obtained $75 being $25 for each of these three recruits he had procured to be mustered in, and that is the money now claimed to be recovered in this action under the allegation that it was a part of the county money, to which the plaintiff was entitled under the agreement aforesaid.

It seemed to me on the trial, and does still, a most baseless claim on the part of the plaintiff. I assume there can be no doubt of the competency of the evidence called out by the resolution of the board of supervisors.

There is no objection stated in any matter of form

touching the proof of· the resolution, all that having been especially waived on·the trial.    The only objection is to the competency of the evidence itself.    But in the light of the claim set up to recover in this case, it is essentially important to ascertain what was the nature and character of the payment thus authorized by the supervisors.

Was it any part of the town and county bounties entering into the possible contemplation of the parties, when. they made their agreement in September, 1864, and carried it out in precise accordance with the terms and spirit of that agreement?    It is entirely clear to my mind that what the parties understood by " bounties" was the sums which had been voted by the towns and the county, as bounties to be paid to enlisted and mustered men, as the price ·for their service.    These bounties were provided for by the issuing of town and county bonds, just as they were then issued, and as both parties understood, and, indeed, knew they had been, and to the precise amount of the sum advanced by the plaintiff, and as the equivalent of which he received the town and·county bonds, at the time he furnished the money which enabled him to procure through the defendant, the substitute he sought.    The language of the resolution is, that "the sum of $25 be ·paid to any person for each volunteer enlisted by. him within the county, after being received and mustered in and credited on the quota of Oneida county, or at any sub-district therein.".

· This is evidently not a " bounty" in any etymological or legal sense of that term.

Both the counsel for the plaintiff and defendant, cite and adopt the definition of Webster, to wit, " that a bounty is a premium offered or given to induce men to enlist into the public service," and this is a proper and intelligible definition, indicating very clearly that bounty is only applicable to the payment·made to the enlisted man, as the inducement for his service, and not a´ premium paid to the

Abbe agt. Allen.

man through whose intervention, and by whose procurement the recruit is obtained and mustered.

It is precisely what the witness, Hawley, who was one of the supervisors who aided in passing the resolution, termed it "hand money" intended for and paid to the man who procured the volunteer. The resolution shows on its face, and in language that cannot be mistaken or misunderstood, that the recruit had nothing to do with this money as a bounty or anything in the nature of bounty ; but that it was the stipulated wages earned or supposed to be by another person, to wit, the one procuring the volunteer and causing him to be mustered in. This is what the defendant did in this case, as he states without contradiction, he "picked out the three men, made out the papers, went to the provost marshal's office, and got them all in," by so doing he earned the hand money, and was entitled to retain it, and the plaintiff is in no manner entitled to re-claim it.

I think the judgment should be affirmed.